IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| BARBARA MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:21-cv-01484 |
| ) | |
| HARBOR CITY VENTURES, LLC; and ) | **JURY TRIAL DEMANDED** |
| JP MARONEY, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Barbara Martin ("Ms. Martin" or the "Plaintiff"), by and through the undersigned counsel, hereby sues Defendants Harbor City Ventures, LLC ("Harbor City") and Jonathan Paul Maroney, also known as JP Maroney ("Maroney"), in his individual capacity (collectively, the "Defendants"), and in support states the following:

**I.    PARTIES**

1. Plaintiff is an individual resident citizen of Palo Alto, Santa Clara County, California.

2. At all relevant times, Defendant Maroney is and has been an individual residing in Melbourne, Florida, and a citizen of Brevard County, Florida.

3. At all relevant times, Defendant Harbor City is and has been a Nevada limited liability company with a principal place of business located at 100 Rialto

Place, Suite 700, Melbourne, Florida 32901 and conducted business in Melbourne, Florida.

4. At all times relevant hereto, the sole member of Defendant Harbor City is and was Defendant Maroney.

5. Because the citizenship of a limited liability company depends on its members, Defendant Harbor City qualifies as a citizen of Brevard County, Florida, because its sole member, Defendant Maroney, is and has been a citizen of Brevard County, Florida, at all times relevant to the causes of action asserted in this Complaint. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

## II. JURISDICTION AND VENUE

6. This is an action for money damages. The claim for money damages exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees. This Court is vested with original jurisdiction over this matter under 28 U.S.C. §1332(a).

7. Defendant Harbor City is subject to the personal jurisdiction of this Court because: (i) at all relevant times, Harbor City, qualified as a citizen of the state of Florida because, at all relevant times, its sole member, Defendant Maroney, was a citizen of Melbourne, Florida, which is located in Brevard County, Florida; and (ii) Harbor City irrevocably consented to the personal jurisdiction of this Court in Section 7 of the Digital Marketing Arbitrage Funding Agreement.

8. Defendant Maroney is subject to the personal jurisdiction of this Court because, at all relevant times, Defendant was a citizen of Melbourne, Florida, which is located in Brevard County, Florida.

9. Venue is proper under Section 7 of the Digital Marketing Arbitrage Funding Agreement, executed by the parties, in which both Plaintiff and Harbor City agreed that the sole and exclusive venue for any action arising out of the Digital Marketing Arbitrage Funding Agreement shall be in the state or federal courts in and for Brevard County, Florida. This Court is the proper venue for federal cases occurring in Brevard County, Florida.

### III. FACTUAL BACKGROUND

10. Ms. Martin first heard of the Harbor City digital marketing arbitrage investment while at a business conference in Las Vegas in the Fall of 2015.

11. A Harbor City representative, whose name is unknown to Ms. Martin, made a presentation at the conference which caused Ms. Martin to follow up with Mr. Maroney.

12. Ms. Martin reached out to Mr. Maroney via telephone and also had e-mails with him regarding the opportunity. Mr. Maroney pitched the investment as digital marketing arbitrage, meaning it was an opportunity to buy online advertising space and sell it at auction for more than the bid price. Mr. Maroney told Ms. Martin that he was getting returns of over 100% via the arbitrage scheme.

13. In November 2015, Ms. Martin signed a "Harbor City Digital Marketing Arbitrage Funding Agreement" (the "Agreement"). (Exhibit A.) By the Agreement's terms, Ms. Martin would loan to Harbor City $100,000 which Harbor City would repay at 75% interest on December 1, 2016.

14. The opening paragraph of the Agreement states, in relevant part that: "On or before December 1, 2016, for value received, [Defendant Harbor City] promises to pay to the order of [Plaintiff]…the principal sum of $100,000.00."

15. Paragraph 2 of the Agreement states, in relevant part that: "Interest of 75% / $75,000.00 ($66,000 to #7230014228, $9,000 to#7230014231 [sic] will be payable [to Plaintiff by Harbor City] in one installment at the time the principal is due."

16. Paragraph 4 of the Agreement states, in relevant part, that Harbor City's "failure to make any payment when due…including the final payment due under this note when fully amortized" constitutes an "[e]vent of default."

17. The parties executed the agreement on November 25, 2015, however, Ms. Martin could not immediately liquidate funds from her IRA and did not make the $100,000 payment on that date.

18. On or about December 3, 2015, Plaintiff paid $100,000.00 to Defendant Harbor City. The Plaintiff's $100,000 was used to fund two "accounts:" #7230014228 for $88,000 and #7230014231 for $12,000.

19. On December 1, 2016, when the loan reached maturity, Harbor City failed to repay Plaintiff the principal sum of $100,000.00 as required by the opening paragraph of the Digital Marketing Arbitrage Funding Agreement. To date, Plaintiff has received no principal payment from Harbor City.

20. Paragraph 14 of the Digital Marketing Arbitrage Funding Agreement states, in relevant part, that, in the event a final payout is not timely requested and realized at the maturity date: ". . . [the] note shall roll over for another 12-month term, at same rate, with principal amount consisting of previous year principal and interest due (if any) combined."

21. In December 2016, Ms. Martin reached out to Mr. Maroney to inquire about the investment and to confirm the outstanding balance due to her.

22. On December 8, 2016, Mr. Maroney confirmed via e-mail that Ms. Martin had two accounts with a total of $175,000 owed, broken down as:

Acct *4428: $88,000 principal + $66,000 interest = $154,000

Acct *4231: $12,000 principal + $9,000 interest = $21,000

23. Ms. Martin made repeated unsuccessful attempts to confirm her balance and withdraw her money and Harbor City would not respond.

24. In an email dated October 17, 2017, JP Maroney acknowledged that the 75% interest rolled over each year and applied to the outstanding balance. According

to that email, the outstanding balance as of December 1, 2017 would be $306,250.

25. All phone numbers Ms. Martin called for Harbor City were forwarded to a single cell phone number. Ms. Martin could never get a verification of the address of the business Mr. Maroney described.

26. In the Summer of 2019, Ms. Martin received a directed marketing video on YouTube in which Mr. Maroney was talking about how well he and his business were doing. Ms. Martin knew that could not be true because she was not getting paid. She became concerned that Mr. Maroney was trying to entice new investors to help him pay current investors, in Ponzi scheme fashion.

27. As of this Complaint filing, Ms. Martin has not received any payment from Harbor City or Mr. Maroney. Her balance due as of June 29, 2021, is $2,248,367.93, with an additional $3,372.55 of interest accruing daily until paid in full.

28. Paragraph 5 of the Digital Marketing Arbitrage Funding Agreement provides for the acceleration of all amounts due thereunder in the event of a default, including principal, interests, attorneys' fees and costs.

29. Paragraph 6 of the Digital Marketing Arbitrage Funding Agreement provides that Harbor City has waived any right to receive notice of acceleration or notice of default.

30. Paragraph Six of the Digital Marketing Arbitrage Funding Agreement

provides that Harbor City has waived "the pleading of any statute of limitations as a defense to any demand against [Harbor City Ventures, LLC / JP Maroney, CEO].

## IV. CLAIMS

### COUNT I – BREACH OF THE DIGITAL MARKETING ARBITRAGE FUNDING AGREEMENT
### (Against Harbor City)

31. Plaintiff incorporates all above paragraphs as if fully reasserted here.

32. Plaintiff sues Defendant Harbor City for breach of the Digital Marketing Arbitrage Funding Agreement, and as grounds therefore asserts the following:

33. Harbor City's failure to pay Plaintiff the principal and interest due, as described above, constituted a default event under the terms of the Digital Marketing Arbitrage Funding Agreement, and constituted a material breach of the Digital Marketing Arbitrage Funding Agreement.

34. Harbor City's failure to pay Plaintiff the principal and interest due at maturity triggered the acceleration clause of the 2016 Digital Marketing Arbitrage Funding Agreement.

35. Per the terms of the Agreement, the outstanding balance as of September 9, 2021, is $2,491,191.53, with an additional $3,372.55 of interest accruing daily until paid in full.

36. As a direct and proximate result of Harbor City's breach of the Digital

Marketing Arbitrage Funding Agreement, Plaintiff has been damaged and is entitled to recover compensatory damages, pre-judgment interest, and reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, pre-judgment interest, attorneys' fees and costs under Paragraph 8 of the Digital Marketing Arbitrage Funding Agreement, and such other and further relief as this Court deems appropriate.

## COUNT II – FRAUD IN THE INDUCEMENT
### (Against Harbor City)

37. Plaintiff incorporates all above paragraphs as if fully reasserted here.

38. At all relevant times throughout the parties' relationship, Harbor City misrepresented the true nature of its business to Plaintiff by claiming that its business consisted of digital marketing arbitrage, which involved buying online advertisement space and selling it at auction for more than the bid price. Further, Mr. Maroney stated that he was getting returns of over 100%.

39. Instead, based on information and belief, Harbor City was nothing more than a shell company.

40. Maroney used Harbor City to employ a multi-level marketing scheme to scam investors into investing in Harbor City's scheme to sell junk "leads" to small business owners, with little to no return for investors, despite written marketing materials describing Harbor City's business as a "digital arbitrage" and promising

investors the "Alternative Investment of the Decade" and "double digit returns" (collectively, the "Misrepresentations").

41. In actuality, besides Harbor City's deceptive and hyperbolic marketing materials, there is little to no evidence that Harbor City had any legitimate business purpose other than inducing loans which it could not repay.

42. Harbor City knew or should have known that the Misrepresentations were false.

43. Harbor City made the Misrepresentations intentionally to induce Plaintiff to enter into the Digital Marketing Arbitrage Funding Agreement.

44. Plaintiff suffered injury as a result of her justifiable reliance on the Misrepresentations.

45. Harbor City's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

46. Harbor City's Misrepresentations and intentional actions were independent of the acts that caused the breach of the 2016 and 2018 Digital Marketing Arbitrage Funding Agreements.

47. Harbor City's Misrepresentations and intentional actions do not involve a cause of action related to product liability.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the above-described compensatory damages, punitive damages, pre-judgment interest,

attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

### COUNT III – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Against Harbor City)

48. Plaintiff incorporates all above paragraphs as if fully reasserted here.

49. Plaintiff is a person, as that term is defined under FDUPTA.

50. Harbor City's brazen marketing practices, as set forth hereinabove, and as realleged herein, were intended to induce unwitting persons, such as Plaintiff, to invest in its business, and the Misrepresentations, as that term is defined herein, in paragraphs 10-30 and 38-41, above, and, as realleged herein, constitute deceptive acts and/or an unfair trade practices in violation of §§501.201, et. seq. of the Florida Statutes ("FDUPTA").

51. Such actions and unfair trade practices are the proximate cause of damages of Plaintiff's damages.

52. Plaintiff suffered actual damages as a result of Plaintiff's violations of FDUPTA.

53. Section 501.2105 of FDUPTA provides for the payment of the prevailing party's attorneys' fees and costs in a civil action by the non-prevailing party.

WHEREFORE, Plaintiff demands judgment against Harbor City for all of the

above-described compensatory damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## COUNT IV – FRAUD IN THE INDUCEMENT
## (Against Maroney)

54. Plaintiff incorporates all above paragraphs as if fully reasserted here.

55. At all relevant times throughout the parties' relationship, through the Misrepresentations, as that term is defined in paragraphs 10-30 and 38-41, above, and, as realleged herein, Maroney misrepresented the true nature of Harbor City's business to Plaintiff.

56. Maroney knew or should have known that the Misrepresentations were false.

57. Maroney made the Misrepresentations intentionally to induce Plaintiff to enter into the Digital Marketing Arbitrage Funding Agreement.

58. Maroney suffered injury as a result of his justifiable reliance on the Misrepresentations.

59. Maroney's Misrepresentations and intentional actions were the proximate cause of the damages to Plaintiff.

60. Maroney's Misrepresentations and intentional actions were independent of the acts that caused the breach of the Digital Marketing Arbitrage Funding Agreement.

61. Maroney's Misrepresentations and intentional actions do not involve a

cause of action related to product liability.

62. Maroney's intentional actions and Misrepresentations provide a sufficient basis to pierce and set aside the corporate veil of Harbor City so that Maroney may be held personally liable for the damages he caused to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Maroney for all of the above-described compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems appropriate.

## V. PRAYER FOR RELIEF

63. Plaintiff hereby adopts and realleges all above-numbered paragraphs as if each were fully and independently realleged herein.

64. Based on the foregoing, the Plaintiff is entitled to be compensated for the damages sustained as a direct, proximate, and consequential result of the Defendant's acts, errors, and omissions. The Plaintiff prays to the Court:

    a) That service of process be had upon the Defendant,

    b) That this case be tried before 12 fair and impartial jurors on all issues so triable,

    c) That judgment be entered against the Defendant in amounts over $75,000.00 with all costs to be taxed against the Defendant,

    d) That the Court grant the Plaintiff all other relief that it deems

appropriate.

### THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Date: September 9, 2021

Respectfully submitted,

_____
Richard S. Frankowski
Florida Bar No.: 23423

**THE FRANKOWSKI FIRM, LLC**
1914 4th Avenue North
Suite 530
Birmingham, AL 35203
Phone: 205-390-0399
Fax: 205-390-1001
richard@frankowskifirm.com
*Attorney for the Plaintiff*